PUTNAM, J. Since the submission of this case I have been in constant attendance at general term, and unable to consider the important questions involved, or even read the elaborate briefs presented, or the opinions of justices RUMSEY, LEWIS, DWIGHT, and MACOMBER on the *Monroe Case,* .20 N. Y. Supp. 97. My associates, comprising a majority of the court, have reached the conclusion that the motion for a *mandamus* should not be granted. Counsel suggest that an early decision of the case by this court is necessary, in order that the opinion of the court of appeals may be seasonably taken upon the question submitted to us. Without an opportunity to examine the case, I am neither able to concur with, or dissent from, the conclusion of my associates. Inasmuch as my opinion, concurring or dissenting, would not change the result, and in order that the matter may be at once submitted to the court of appeals, I deem it advisable not to retain the case for examination.

---

### JEPSON *v.* POSTAL TELEGRAPH CABLE CO.

#### (*Cattaraugus County Court.* July, 1892.)

SERVICE OF PROCESS—CORPORATIONS—"MANAGING AGENT."

A telegraph operator is not a "managing agent" of the telegraph company, within Code Civil Proc. § 431, providing that process against a corporation may be served on the president or other officer or "managing agent."

Appeal from justice court.

Action by Jepson against the Postal Telegraph Cable Company. From a judgment for plaintiff, defendant appeals. Reversed.

*T. H. Dowd,* (*R. H. Guernsey,* of counsel,) for appellant. *V. C. Reynolds,* for respondent.

VREELAND, J. The appellant raises the preliminary question that the summons was not properly served.

The return shows that the summons was served upon one Benton E. Weaver, who was a telegraph operator having charge of the company's local telegraph office in the village of Salamanca. The constable who served the summons returned that Weaver was a "managing agent" of defendant, but from the affidavits read by the defendant, and the papers submitted on the argument by plaintiff, it is plain that Weaver was in no sense of the term a "managing agent." By section 431, Code Civil Proc., a summons may be served upon the president and other officers of a corporation, or upon a managing agent. Section 2879 applies the provisions of section 431 to actions in courts of justices of the peace. A defect appears to exist in the statute, in making no provision for the service of a summons upon such a corporation as is the defendant, in cases where none of the persons named in section 431

reside within the jurisdiction of a justice's court. While the proceedings do not show such a state of facts to exist in this case, it is probably true that plaintiff could begin her action in no other way. The service upon Weaver appears to have given the justice no jurisdiction over the defendant. In the papers submitted by the plaintiff, Weaver represents himself as being a telegraph operator for defendant, with an office on Main street, in Salamanca, having charge of the wires, putting up and keeping in repair, in a certain defined section of country, under the orders of the chief operator. The meaning of the term "managing agent" has been clearly defined in several decisions, both in section 431 and section 432. In *Reddington* v. *Mariposa, L. & M. Co.*, 19 Hun, 405, the opinion reads: "It is quite clear that the legislature attached importance to the term 'managing agent,' and employed it to distinguish a person who should be invested with general power, involving the exercise of judgment and discretion, from an ordinary agent or employe, who acted in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of the work and the manner of executing the same." This case was under section 432 of the Code, but the words "managing agent" have the same meaning, and are used in the same sense, in each section. To the same import is *Winslow* v. *Transit Co.*, (Sup.) 4 N. Y. Supp. 169.

It is more than doubtful if the evidence offered by plaintiff upon the trial was sufficient to authorize any judgment whatever. It seems likely that some persons in the employ of defendant, in the work of stringing wires for the telegraph line, wantonly mutilated some shade trees growing in the highway in front of plaintiff's residence; but the evidence entirely fails to point out the persons who did the mischief, or to connect them with the defendant. The only evidence of the injury was given by Clarence Jepson, a son of plaintiff, who testified to a conversation with Weaver, the agent, about defendant cutting them off, (meaning the trees,) and that Weaver had told him that they had cut the trees down. It may be fairly assumed that the witness intended to say that some persons in the employ of defendant cut the trees, but he fell far short of so saying. Besides, the declarations of Weaver were not admissible to bind the defendant. He was simply an employe, not even shown to have been connected with the cutting, or to have had any personal knowledge as to who did it. It may be that the injury complained of was willful and unlawful, but for the reasons stated the recovery cannot be sustained. The judgment is reversed.